[Cite as *In re S.W. Children*, 2011-Ohio-1353.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| S./W. CHILDREN | Hon. Julie A. Edwards, J.<br>Hon. John W. Wise, J. |
| | Case No. 2010CA00321 |
| | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2008JCV00849 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 21, 2011 |
| APPEARANCES: | |

| For Appellee | For Appellant |
|---|---|
| LISA A. LOUY<br>Legal Counsel<br>Stark County Department<br>Of Job and Family Services<br>221 Third Street SE<br>Canton, Ohio 44702 | AARON KOVALCHIK<br>116 Cleveland Ave NW<br>Suite 808<br>Canton, Ohio 44702 |

*Hoffman, P.J.*

{¶1}   Appellant Francesca Steadman ("Mother") appeals the October 19, 2010 Judgment Entry and October 19, 2010 Findings and Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges and obligations with respect to her four minor children and granted permanent custody of the children to Appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother is the biological mother of G.S. (DOB 10/8/98), D.W. (DOB 12/29/01), S.W. (DOB 10/24/05), and E.W. (DOB 6/19/07).  On July 24, 2008, Mother and David Wise, Jr., father of D.W., S.W., and E.W., were arrested and incarcerated for felony intimidation of a witness.[1]  The condition of Mother's home was unacceptable for the children.  The maternal grandmother reported she had been providing care for the children as Mother was not doing so.  SCDJFS permitted the children to stay with maternal grandmother.  However, on July 27, 2008, SCDJFS learned maternal grandmother had threatened to kill the children and put antifreeze in their bottles. Maternal grandmother was arrested for aggravated menacing and endangering children.  The children were removed from her home and were found to be infested with lice.  The trial court conducted an emergency shelter care hearing on July 30, 2008, and placed the children into the temporary custody of SCDJFS.

{¶3}   The trial court conducted an adjudicatory hearing on October 8, 2008.  At that time, SCDJFS moved to delete the allegations of neglect, which the trial court

---

[1] David Wise, Jr. and the father of G.S. are not parties to this Appeal.

granted. Mother stipulated to a finding of dependency. The trial court appointed Attorney Brent A. Barnes as guardian ad litem for the children.

{¶4} SCDJFS filed a motion for permanent custody on June 11, 2009. The trial court conducted a dispositional review hearing on August 18, 2009, at which time the trial court extended temporary custody for six months as Mother was making progress on her case plan. The trial court subsequently extended temporary custody an additional six months until July 28, 2010. SCDJFS refilled its motion for permanent custody on June 3, 2010. Mother filed a motion for a return of custody to her and for the termination of SCDJFS's involvement.

{¶5} The trial court conducted a hearing on the motion for permanent custody on October 14, 2010.

{¶6} Wanda Pounds, the ongoing family service worker with SCDJFS assigned to the case, testified, via a pre-adjudicatory order, Mother was to have a psychological evaluation/parenting evaluation at Northeast Ohio Behavioral Health. The order also required David Wise, Jr. to have a psychological evaluation at Melymbrosia. Mother had her psychological evaluation/parenting evaluation conducted at Melymbrosia. SCDJFS accepted the change of mother's evaluation by Melymbrosia as the evaluation had already been completed. The Melymbrosia report revealed Mother was in the low range mentally and was unable to parent the children independently. The evaluator recommended Mother have long-term parenting instructions and individual therapy, but even with that, the evaluator did not feel Mother could handle parenting on her own.

{¶7} Mother attended Goodwill parenting, and received a certificate of attendance. The parenting instructor noted Mother struggled to pay attention to all of

the children, recalling several instances during which Mother was more involved with the two youngest children and left the older two children to play independently or to play with other children. On one occasion, D.W., the oldest daughter, struggled to get Mother's attention. After saying, "Mom", a number of times, the child sat down and cried for the last half-hour of the visit. While engaged in the Goodwill parenting program, Mother was arrested for complicity to theft and obstructing official business.

{¶8} Pounds recalled a conversation with Mother regarding her need for a bus pass as her car had been impounded. Mother could not get her car out of impound because she did not have a driver's license. Mother then admitted she "skirted" around Alliance as not to run into the police and get in trouble for driving without a license.

{¶9} Mother's case plan required her to attend individual counseling. Mother started sessions at Trillium. The therapist reported Mother was not making much progress. After SCDJFS filed its first motion for permanent custody, Mother began doing some meaningful work and started to make progress. The therapist indicated Mother had successfully completed the Trillium program, but felt her issues could be better addressed with a more intensive parenting program. At that point, SCDJFS contacted Goodwill Home-based to begin a home-based parenting program with Mother. Mother completed the coursework and met with the instructor regularly. Although Mother showed some frustration in balancing all four children, the Goodwill instructor felt Mother was doing enough to proceed to unsupervised weekend visitations. After the first weekend visit, the children reported maternal grandmother had spent the weekend at Mother's home. Mother had been informed on numerous occasions maternal grandmother was not to have contact with the children. In addition,

Pounds asked Mother not to take the children out excessively over the weekend as S.W. was recovering from pneumonia. Nonetheless, Mother took the children out a number of times. When the SCDJFS aid arrived ten minutes early to pick up the children, Mother had the children waiting at the door with their coats on. Pounds described Mother as frustrated and eager for the children to leave.

{¶10} During this time, Mother became involved with an individual named Ryan Collins with whom she had her fifth child, C.C.[2] Mother's probation officer showed up unannounced and Mother let him in only after he threatened to call the police and violate her probation. While walking through the home, the probation officer found Collins in one of the bedrooms, wearing female underwear with his hands down his pants. After looking into Collins' history, the probation officer learned Collins had a long, ongoing history of inappropriate sexual behavior with young children. Pounds also recalled when Mother became pregnant with C.C., she denied she was pregnant, and took steps to avoid detection of the pregnancy and the birth of the child. At the time of the hearing, Mother was still involved with Collins. Due to her involvement with Collins and allowing the children to be with maternal grandmother, Mother's unsupervised weekend visits were terminated. Goodwill home-based parenting terminated Mother from their program.

{¶11} Pounds also testified during the best interest portion of the hearing. Pounds stated the children are Caucasian. G.S., the oldest, has been diagnosed with ADHD, and is currently receiving therapy through Children and Adolescent Service Center. During the summer, he spent time in therapeutic groups, learning social skills,

---

[2] C.C. is the subject of a separate Appeal.

and anger management skills. G.S. also has some cognitive issues and has an independent education plan at school, but his therapist feels he needs a more extensive evaluation. S.W., who was five at the time of the hearing, has speech delays and a lazy eye. The girl recently had tubes implanted in her ears. She attends Head Start and is receiving speech services, and her speech is improving rapidly. E.W., who was three at the time of the hearing, has temper tantrums, but nothing which requires any therapeutic services. Pounds indicated there were no issues with eight year old D.W.

**{¶12}** The three oldest children, G.S., D.W., and S.W., are in the same foster home and have been there since July, 2008. In August, 2010, E.W. was moved into a placement with C.C. All four children are doing well in their placement. Pounds indicated SCDJFS has a prospective adoptive situation and the family is interested in adopting all five children. Pounds also noted, although the children are bonded with Mother, the children need a permanent home. Adoption would give the children stability and safety, which remain issues in Mother's home.

**{¶13}** Via Judgment Entry filed October 19, 2010, the trial court terminated Mother's parental rights, privileges and obligations with respect to the children, and granted permanent custody of the children to SCDJFS. On the same day, the trial court filed Findings of Fact and Conclusions of Law.

**{¶14}** It is from this judgment entry and the trial court's findings of fact and conclusions of law, Mother appeals, raising as her sole assignment of error:

**{¶15}** "I. JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF

PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶16} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).

I

{¶17} In her sole assignment of error, Mother contends the trial court's finding a grant of permanent custody to SCDJFS would be in the children's best interest was against the manifest weight of the evidence.

{¶18} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶19} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶20} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to

grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶21} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶22} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶23} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶24} As set forth in our Statement of the Facts and Case, supra, all of the service providers, after working with Mother, determined Mother was unable to parent the children independently. During visits, Mother was unable to give her attention to all of the children. D.W. became so frustrated trying to get Mother's attention, she cried for the last half-hour of one visit. When service providers believed Mother had progressed to unsupervised weekend visitation, Mother went against Wanda Pounds' directives. Mother allowed maternal grandmother to stay with the children after maternal grandmother had been charged with four counts of child endangering. Mother also became involved with Collins, who has a long history of sexually inappropriate behavior involving children. Mother either chose not to incorporate what she learned into her parenting or was unable to do so.

{¶25} At the time of trial, the children had been in the custody of SCDJFS for more than two years. G.S. was diagnosed with ADHD, and was receiving the appropriate services. S.W. had delayed speech, but such was addressed with surgery and speech therapy. All of the children are doing well in their placements and are bonded with one another. The foster family caring for E.W. and C.C. are interested in

adopting all five of the children. Pounds testified the children's need for stability and security outweighed the bonds that would be broken due to a grant of permanent custody.

{¶26} Based upon the foregoing, we find the trial court's finding it was in the children's best interest to grant permanent custody to SCDJFS was not against the manifest weight of the evidence.

{¶27} Mother's sole assignment of error is overruled.

{¶28} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.

Edwards, J. and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS


s/ John W. Wise_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                :
                                     :

S./W. CHILDREN               :

                                     :

                                   :         JUDGMENT ENTRY

                                   :

                                   :

                                   :         Case No. 2010CA00321

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.  Costs assessed to Appellant.

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS


s/ John W. Wise_____
HON. JOHN W. WISE